**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| THE IT GROUP, INC., ET AL. | ) | Case No. 02-10118 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |
| THE SHAW GROUP, INC., and | ) | |
| SHAW ENVIRONMENTAL, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 04-57971 |
| | ) | |
| | ) | |
| BECHTEL JACOBS COMPANY, LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of The Shaw Group, Inc., and Shaw Environmental, Inc. (collectively, "Shaw") seeking prejudgment interest on the judgment entered in its favor against Bechtel Jacobs Company, LLC ("Bechtel"). For the reasons set forth below, the Court will grant the Motion, in part.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.  BACKGROUND

Shaw provides various engineering, construction, and consulting services.  Bechtel is the environmental management contractor for the United States Department of Energy's Oak Ridge Operations Office in Oak Ridge, Tennessee.

Prior to filing for chapter 11 relief, IT Group, Inc., and its affiliates (the "Debtors") and Bechtel entered into four contracts (the "Subcontracts"), under which the Debtors were to perform various services.[2]  Shortly after filing their bankruptcy petitions, the Debtors and Shaw entered into an Asset Purchase Agreement ("APA"), whereby Shaw agreed to acquire substantially all the Debtor's assets, including three of the four Subcontracts.  Shaw determined not to acquire the Portsmouth Contract.  The Court entered a Sale Order approving the APA on April 25, 2002.  The sale of assets occurred on May 3, 2002.

Subsequent to the sale, Shaw performed environmental remediation work under the acquired Subcontracts and Bechtel paid 90% of the invoiced amounts, retaining 10% pursuant to a provision in the Subcontracts ("Retention Provision"), whereby Bechtel was entitled to retain 10% of the balance until: (i) final acceptance of the work or (ii) the retention balance reached $1,000,000.

---

[2] The four contracts were referred to as: the TSCA Contract, the Burial Ground Contract, the Tank Contract, and the Portsmouth Contract.

The retention amount on the TSCA Contract reached $1,000,000.  As a result, on February 14, 2003, Shaw sent Bechtel an invoice for the full balance.  Bechtel refused to pay the balance, asserting a right to offset any rejection damages under the Portsmouth Contract against the amounts due and owing under the TSCA and Tank Contracts.  On December 17, 2004, Shaw filed an adversary complaint seeking declaratory relief and damages for breach of contract and unjust enrichment.  Both parties moved for summary judgment.  By Opinion and Order dated September 21, 2006, the Court granted Shaw's motion and denied Bechtel's motion.  See Shaw Group, Inc. v. Bechtel Jacobs Co. (In re IT Group, Inc.), 350 B.R. 166, 182 (Bankr. D. Del. 2006).

On October 2, 2006, Shaw filed a Motion for prejudgment interest, seeking interest in the amount of $490,663.  Bechtel opposed the motion.  Briefing is complete, and the matter is ripe for decision.

II.  <u>JURISDICTION</u>

This adversary proceeding is a core matter over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A).

3

III. <u>DISCUSSION</u>

    A.  <u>Prejudgment Interest Under the Subcontracts</u>

Bechtel contends that the Subcontracts expressly preclude the award of prejudgment interest. Specifically, the Subcontracts provide:

> The Parties agree to make good faith efforts to settle any dispute or claim that arises under this Subcontract through discussion and negotiation. If such efforts fail to result in a mutually agreeable resolution, <u>the Parties shall consider</u> the use of alternative dispute resolution (ADR). <u>In the event non-binding mediation or arbitration is agreed upon,</u> the site of the proceeding shall be Oak Ridge, Tennessee. <u>The mediator or arbitrator shall allocate cost</u>, except that <u>there shall be no pre-decisional interest costs</u>, and each Party shall bear its discretionary costs.

(Subcontracts, General Conditions, Exhibit A at 4 (emphasis added).)

Considering the agreement as a whole, the Court finds GC-4 unambiguous. The provision on which Bechtel relies describes the parties' obligation to consider the use of ADR. If the parties choose mediation or arbitration as a means to resolve their dispute, then an award of pre-decisional interest by a "mediator" or an "arbitrator" is precluded. In this case, however, Shaw chose to litigate its dispute in court. Therefore, the ADR provisions are inapplicable. No other provision in the Subcontracts precludes an award of prejudgment interest where the dispute is not mediated or arbitrated.

B.   <u>Applicable Law</u>

Bechtel argues that the Subcontracts expressly require application of federal government contract law and, specifically, the Contract Disputes Act ("CDA") to disputes involving the Subcontracts.  <u>See</u> Contract Disputes Act of 1978, 41 U.S.C. §§ 601 <u>et. seq</u>.

Shaw, on the contrary, contends that the determination of an award of prejudgment interest on the judgments, which were based on state law claims of breach of contract and unjust enrichment, is governed by Tennessee law.  <u>See</u> <u>In re Payroll</u>, Nos. 92-43150 (ALG), 98-8405, 2005 WL 3789326, at *2 (Bankr. S.D.N.Y. July 28, 2005) (concluding that state law applied to prejudgment interest determination on breach of contract and negligence claims arising under state law).

> The choice of law provision of the Subcontracts states:
>
> The Parties agree that irrespective of the place of performance, this Subcontract shall be interpreted and all substantive issues presented for mediation, arbitration, dispute, claim, litigation or other effort at resolution <u>shall be determined in accordance with federal law of government contracts . . . .  To the extent that the federal law of government contracts is not dispositive, the laws of the state in which the work is to be primarily performed shall apply</u>.

(Subcontracts, General Conditions, Exhibit A at 4 (emphasis added).)  Thus, the language of the Subcontracts mandates the application of the federal law of government contracts, as long as that law is dispositive on the issue.

Federal government contract law does govern the circumstances under which prejudgment interest may be granted. 41 U.S.C. § 611 (2006). See also Richlin Sec. Serv. Co. v. Chertoff, 437 F.3d 1296, 1301-02 (Fed. Cir. 2006) (concluding that after prevailing on its claim, a contractor could recover interest for amounts actually paid).

Shaw argues, however, that the CDA does not apply here because the CDA generally does not apply to subcontractors. Shaw cites cases in which courts have denied the subcontractor recovery against the United States under the CDA because the subcontractor was not a party to the government contract. See, e.g., Lockheed Martin Corp. v. United States, 48 F. App'x 752, 755 (Fed. Cir. 2002) (designated as non-precedential by the court) (precluding subcontractor from recovering against "the United States for amounts owed to it by the prime contractor"); MRT Constr., Inc. v. Hardrives, Inc., 158 F.3d 478, 482 (9th Cir. 1998) (concluding that the subcontractor was not entitled to interest under the CDA because it was not in privity of contract with the government).

The cases cited by Shaw are not persuasive, however, because in this case Shaw is seeking recovery of prejudgment interest against a private party, not the United States. Although the CDA generally governs contracts between the United States and contractors, the Subcontracts assumed by Shaw expressly provided

that federal government contract law, when dispositive, applied to contract disputes between the Debtors (now Shaw) and Bechtel. Both companies were sophisticated parties who bargained for the choice of law provision.  There is nothing that precludes contracting parties from choosing to apply a law that, absent their agreement, would not be applicable to them.  See, e.g., Solitron Devices, Inc. v. Honeywell, Inc., 842 F.2d 274, 277 n.3 (11th Cir. 1988) (concluding that because "[t]he parties specified in the subcontract that it was to 'be construed and interpreted according to the Federal law of Government Contracts[,]' [the court] give[s] effect to the parties' contractual choice of law where, as here, doing so does not contravene public policy."); Barzda v. Quality Courts Motel, Inc., 386 F.2d 417, 418 (5th Cir. 1967).  Further, the Subcontracts expressly incorporated Federal Acquisition Rule ("FAR") 52.232-17, which sets the applicable interest rate at the rate that applies to government contractors under the CDA. (Subcontracts, General Conditions, Exhibit A at 21.)

Accordingly, the Court will apply federal government contract law to determine whether prejudgment interest should be awarded.

C.  Application of Federal Government Contract Law

The CDA provides the requisite authority for an award of prejudgment interest in this case.  See, e.g., Nat'l Park

7

Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 805 n.2 (2003) ("The CDA . . . provides that a prevailing contractor is entitled to prejudgment interest."); Richlin Sec. Serv. Co., 437 F.3d at 1301-02; Info. Intern. Assocs., Inc. v. United States, No. 04-1489C, 2006 WL 3094075, at *17 (Fed. Cl. Oct. 31, 2006).

Under section 611 of the CDA, a contractor is entitled to "[i]nterest on amounts found due" the contractor on an asserted claim. 41 U.S.C. § 611. The legislative history of section 611 explains that prejudgment interest is awarded to government contractors because they typically do not receive progress or other periodic contract payments.[3]

In this case, however, there is arguably no policy reason to apply the CDA here because Shaw did receive periodic contract

---

[3] The Senate Report for section 611 states:

> The rights of Government contractors who prevail upon claims against the Government are unique since they have been required by language of the contract . . . to perform the work directed by the Government without stopping to litigate. . . . Since the contractor has been compelled to perform the work with its own money – in the total absence of contract payments or progress payments — there can be no equitable adjustment to the contractor until the contractor recovers the entire cost of the additional work. The cost of money to finance this additional work while pursuing the administrative remedy, normally called interest, is a legitimate cost of performing the additional work.

S. Rep. No. 95-1118, at 32 (1978), as reprinted in 1978 U.S.C.C.A.N. 5235, 5266. See also, Richlin Sec. Serv. Co., 437 F.3d at 1301.

payments.  It is not necessary to decide this issue because even under Tennessee law, which Shaw asserts is applicable, prejudgment interest is appropriate.  Under Tennessee law, an award of prejudgment interest, though discretionary, is generally allowed where the amount due a plaintiff is certain and not disputed.  See, e.g., Myint v. Allstate Ins. Co., 970 S.W.2d 920, 927 (Tenn. 1998); Mitchell v. Mitchell, 876 S.W.2d 830, 832 (Tenn. 1994).  The Supreme Court of Tennessee explained the rationale for awarding prejudgment interest:

> Loss of use of funds due is the necessary result of the failure to pay an obligation according to its terms.  The usual means of compensating for this necessary result is the allowance of interest.  Interest recovered in order to make the obligee whole is the relief usually sought, and the allowance of prejudgment interest under such circumstances is familiar and almost commonplace.

Mitchell, 876 S.W.2d at 832 (internal quotations and citation omitted).

In this case, most of the debt upon which Shaw seeks prejudgment interest is due and not disputed.

### D. Calculation of Amount of Prejudgment Interest Due

#### 1. Interest on $1 million Retention

On October 11, 2006, Bechtel paid Shaw $215,339.25 by wire-transfer, which represented the full amount of the Tank Contract retention.  Performance under the Tank Contract is complete.  Bechtel also wired Shaw $927,432.55, representing the aggregate amount Bechtel withheld under the TSCA Contract after the TSCA

9

retention reached $1 million.  It is undisputed that Shaw has not completed its work under the TSCA Contract.  Bechtel therefore continues to hold the original $1 million TSCA retention until final acceptance of the work performed under the TSCA Contract.

While Bechtel does not dispute that there was an amount due under the Tank Contract at the time of judgment, it contends that Shaw is not entitled to interest on the $1 million TSCA Contract retention because that was not due to be paid as the work was not complete.  (See TSCA Subcontract Special Conditions, SC-13, Exhibit B at 9.)  Rather, Bechtel contends that Shaw is only entitled to interest on the amounts above the $1 million that were withheld from the date they were due until they were paid on October 11, 2006.

Shaw does not dispute this condition of the Subcontract. For the first time in its Reply Brief, however, Shaw argues that the parties modified the Subcontract in February 2003, as a result of which the retention was indisputably due on March 16, 2003.  Shaw asserts that through a series of e-mails, Bechtel confirmed that the $1 million TSCA Retention was due and owing.

Under Tennessee law[4] "a modification of an existing contract must be supported by consideration."  Hill v. Goodwin, 722 S.W.2d

---

[4] The CDA and other federal government contract law do not address contract modifications.  Accordingly, federal law is not dispositive.  As a result, Tennessee law applies pursuant to General Condition 4 of the Contract.

10

668, 671 (Tenn. App. 1986). In its Reply Brief, Shaw does not provide any evidence that new consideration was given to alter the parties' original agreement. Further, Shaw makes no other alternative argument, such as estoppel, that might excuse the lack of consideration.

Additionally, the evidence of a contract modification provided by Shaw is unpersuasive. In the e-mail dated March 18, 2003, in which Bechtel's Procurement Representative wrote that the $1 million retention was approved for payment on March 29, 2003, he noted that Bechtel's Legal Department was "reviewing [the] release of retention in relationship to backcharge issues with other IT subcontracts." (Plaintiff's Reply Brief on Motion for Prejudgment Interest, Exhibit A.) Thus, Bechtel's agreement to payment of the retention was equivocal and conditioned on review by its Legal Department.

Consequently, the Court concludes there was no modification of the Contract. Accordingly, Shaw is only entitled to prejudgment interest on the $215,339.25 withheld under the Tank Contract and the $927,432.55 withheld under the TSCA Contract.

### 2. Interest at Federal/State Rate

Shaw asserts, however, that the state interest rate rather than the federal rate is applicable. The Court disagrees. Because the CDA applies, the appropriate rate of interest is "the rate established by the Secretary of the Treasury pursuant to

Public Law 92-41 (85 Stat. 97) for the Renegotiation Board." 41 U.S.C. § 611.  See also FAR 52.232-17 ("The interest rate shall be the interest rate established by the Secretary of the Treasury as provided in Section 12 of the Contract Disputes Act of 1978) . . . .").

Bechtel calculated the interest due under the Tank Contract at $23,195.43 by applying the federal rate for each successive six-month period from July 4, 2004 (the date Shaw asserts the amounts were due and owing) to October 11, 2006 (the date the $215,339.25 due under the Tank Contract was paid).

Bechtel calculated $52,208.29 as the interest due on the $927,432.55 retained above the $1 million retention under the TSCA Contract.  The interest was calculated using the federal rate applicable to each six-month period from the date each withheld payment was due until the time it was paid on October 11, 2006.

The Court agrees with Bechtel's calculations.  Accordingly, the Court will award Shaw $23,195.43 in prejudgment interest under the Tank Contract and $52,208.29 in prejudgment interest under the TSCA Contract.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Shaw's motion for prejudgment interest with appropriate modifications of

the amount requested.

An appropriate Order is attached.

Dated: December 8, 2006          BY THE COURT:

_Mary F. Walrath_
Mary F. Walrath
United States Bankruptcy Judge